**SIGNED THIS: July 09, 2008**

_____
**MARY P. GORMAN
UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | In Bankruptcy |
| TREVOR M. JARVIS, ) | |
| ) | Case No. 07-72281 |
| Debtor. ) | |

## O P I N I O N

This case is before the Court for decision on confirmation of the Debtor's Chapter 13 Plan ("Plan"). The Plan provisions raise the issue of the extent to which the Debtor may obtain the permanent modification of a creditor's rights when the Debtor is not entitled to a discharge after completion of Plan payments. For the reasons set forth herein, this Court finds that the Debtor's ineligibility for a discharge limits his ability to modify the creditor's rights as proposed and, therefore, Plan confirmation

-1-

must be denied.

Trevor M. Jarvis ("Debtor") filed his voluntary petition under Chapter 13 on October 31, 2007. Debtor previously filed a Chapter 7 case on December 15, 2006, and received a discharge in that case on March 22, 2007. Because of the prior discharge, the Debtor is ineligible to receive a discharge in this case. *See* 11 U.S.C. §1328(f)(1). Debtor acknowledged that fact by filing a waiver of discharge on November 14, 2007.

Debtor's Schedule A discloses that the Debtor owns residential real estate in Loami, Illinois valued at $66,700. Debtor's Schedule D shows that he owes $70,677 to South Central Illinois Mortgage secured by a first mortgage on the Loami property, and also owes $8,720 to Heartland Credit Union secured by a second mortgage on the Loami property. Further, Debtor acknowledges ownership of a 2000 Chevrolet truck valued at $9,750 which is encumbered by a lien of Banco Popular securing a debt of $8,734. Debtor's Chapter 7 Schedules filed in 2006 disclosed similar information about these assets and debts. None of these secured debts were reaffirmed by the Debtor in his Chapter 7 case.

Debtor's Schedule F consists of an eight-page listing of unsecured debts. Each of the 49 creditors listed is described as an "unknown claimant", and the amount of each claim is listed as "unknown". All of the unsecured creditors listed on Debtor's current Schedule F appear to have been listed on the Schedule F

filed in the prior Chapter 7 case.  On the Chapter 7 Schedule F, however, the actual consideration for and the specific amounts of many of the claims were disclosed by the Debtor.

On October 13, 2007, Debtor filed his Plan.  In his Plan, the Debtor proposes to pay to the Chapter 13 Trustee ("Trustee") $1,051.08 for a period of 12 months.  From the sums paid in, the Trustee is directed to make the Debtor's monthly first mortgage payment to South Central Illinois Mortgage in the amount of $689.14 and his monthly car payment to Banco Popular in the amount of $278.64.  No payments are proposed for unsecured creditors. Presumably, the difference between the amounts to be paid in and the amounts to be distributed is sufficient to pay the Trustee's fees.

The Plan proposes the following  treatment of Heartland Credit Union:

> Debtors (*sic*) indicate the claim of Heartland Credit Union is fully unsecured as the value of the residence which is collateral for said claim does not exceed the value of the first mortgage and associated cost. As such claim is fully unsecured, the claim of Heartland Credit Union is void with respect to 11 USC 506(d) and such security interest is hereby stripped off upon confirmation of Debtor's Plan. Heartland Credit Union's lien is stripped off and Heartland Credit Union shall receive no payments through the Debtor's Plan and any security interest shall be stripped off and considered void.

Plan *at* pp. 1-2.

It is this provision of Debtor's Plan which bestows more relief than the Debtor is entitled to receive given the fact that

-3-

no discharge order will be entered. Accordingly, Plan confirmation must be denied.

The ability of debtors to avoid, "strip down", or "strip off" liens has been the subject of significant litigation throughout the years. Generally, liens on property pass through bankruptcy unaffected. *See* Farrey v. Sanderfoot, 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991); Johnson v. Home State Bank, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) (a bankruptcy discharge leaves in tact *in rem* actions); City of Richmond v. Bird, 249 U.S. 174, 177, 39 S.Ct. 186, 187-88, 63 L.Ed. 543 (1919) (construing Section 67d of the 1898 Bankruptcy Act to prohibit lien avoidance).

The passage of the Bankruptcy Reform Act of 1978 introduced the Bankruptcy Code, and §506 of the Code was initially thought to constitute a significant change in the law by providing a basis to avoid undersecured liens. *See* Gaglia v. First Federal Savings & Loan Assn., 889 F.2d 1304, 1306-11 (3d Cir. 1989). The relevant portions of §506 are the following:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction

-4-

>       with any hearing on such disposition or use or on a plan
>       affecting such creditor's interest.
>
>                              * * * *
>
>          (d)  To the extent that a lien secures a claim against
>       the debtor that is not an allowed secured claim, such
>       lien is void, unless -
>
>              (1)  such claim was disallowed only under
>          section 502(b)(5) or 502(e) of this title; or
>
>              (2)  such claim is not an allowed secured
>          claim due only to the failure of any entity to
>          file a proof of such claim under section 501
>          of this title.

11 U.S.C. §506(a)&(d).[1]

Simply put, the theory of lien stripping is that §506(a) allows a bifurcation of an undersecured claim into two separate claims.  A secured claim is allowed to the extent of the value of the collateral, and the balance of the claim is allowed as unsecured.  Using §506(d), the creditor's lien is then limited to the amount of the allowed secured claim only, and the balance of the lien, which is unsecured, is stripped.

In 1992, however, the Supreme Court of the United States held that the provisions of §506(d) do not allow a Chapter 7 debtor to strip a lien on property based on the undersecured status of the creditor holding the lien.  <u>Dewsnup v. Timm</u>, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).  The Court found the provisions

---

[1] The statutory provision quoted here is that which was in effect prior to the enactment of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

-5-

of §506 to be ambiguous, but determined that there was no legislative intent to alter "the pre-Code rule that liens pass through bankruptcy unaffected." Dewsnup, 502 U.S. *at* 417, 112 S.Ct. *at* 778.

Dewsnup held that, because the creditor had an allowed secured claim pursuant to §502 of the Code, the creditor's claim did not come within the scope of §506(d) and the lien could not be avoided. Id. Dewsnup ended the practice of stripping undersecured consensual liens in Chapter 7 cases using §506 of the Code.

Notwithstanding Dewsnup, lien stripping remains available to some degree in Chapter 13 cases due to §1322(b)(2), which provides in relevant part:

> (b)   Subject to subsections (a) and (c) of this section, the plan may -
>
> * * *
>
> (2)  modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

11 U.S.C. §1322(b)(2).

Because Chapter 13 expressly allows the modification of the rights of creditors, lien rights may be altered by the terms of a confirmed Chapter 13 plan. However, the Supreme Court has held that the lien rights of an undersecured creditor with a claim secured only by a lien on the debtor's principal residence may not

be modified. *See* Nobelman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d. 228 (1993). Relying on Dewsnup and the interpretation of §506 contained therein, the Court found that the right to "retain the lien until the debt was paid off" was one of the creditor's rights which could not be modified pursuant to §1322(b)(2) when the creditor's collateral consisted only of the debtor's residence. Nobelman, 508 U.S. *at* 329, 113 S.Ct. *at* 2110.

Although Nobelman seemed to sound the death knell for lien stripping on debtors' residences in Chapter 13 cases, a further line of cases subsequently developed dealing with the limited circumstance of the creditor's lien being fully unsecured due to a total lack of any equity in the residential collateral to support the lien. Many courts have held that, when a junior lien is totally unsecured because the senior liens exceed the value of the property, the anti-modification provisions of §1322(b)(2) relating to residential property do not apply. *See, e.g.,* In re McDonald, 205 F.3d 606 (3d Cir. 2000); In re Pond, 252 F.3d 122 (2d Cir. 2001); In re Lane, 280 F.3d 663 (6th Cir. 2002); In re Holloway, 2001 WL 1249053 (N.D. Ill. 2001); In re Waters, 276 B.R. 879 (Bankr. N.D. Ill. 2002); In re King, 290 B.R. 641 (Bankr. C.D. Ill. 2003). *Contra* In re Barnes, 207 B.R. 588 (Bankr. N.D. Ill. 1997).

In King, the requirements for the strip off of a totally unsecured lien were outlined. The proposed strip off may be raised as a contested matter and presented as a provision in a Chapter 13

plan.  A separate adversary proceeding is not necessary.  <u>King</u>, 290 B.R. *at* 647-48.  However, the plan provisions must be sufficiently detailed to give the creditor clear notice of the intended treatment of its claim.  In addition to identifying the creditor and its claim specifically, the plan must provide "explanatory detail" to advise the creditor of the basis for the lien strip off.  <u>Id.</u> *at* 649.  Finally, although the "lien-avoiding effect of the confirmed plan" is established at confirmation, actual lien avoidance is contingent upon the debtor completing the plan and receiving a discharge.  <u>Id.</u> *at* 651.  <u>King</u> set the precedent in the Central District of Illinois for the stripping of totally unsecured liens on residential property in Chapter 13 cases, and this Court has consistently followed that precedent.

When <u>King</u> and the cases relied on in <u>King</u> were decided, a Chapter 13 debtor was eligible to receive a discharge upon completion of plan payments regardless of whether the debtor had received a prior discharge in another bankruptcy case.  11 U.S.C. §1328(a).  The Code, at that time, contained no waiting period after the receipt of a discharge in a prior case before a discharge could be obtained in a Chapter 13 case.  Accordingly, debtors who completed their plan payments received a general discharge.  Some debtors who failed to complete their payment plan still qualified for a discharge, albeit the more limited, hardship discharge.  11 U.S.C. §1328(b).  The cases of debtors who did not complete their

payments and did not qualify for a hardship discharge were dismissed. Upon dismissal of a case, liens avoided under §506(d) are reinstated. 11 U.S.C. §349(b)(1)(C). Thus, the King court was on solid ground in holding that completion of the plan and receipt of a discharge were required to obtain permanent relief in the form of lien avoidance based on §506. *See also* Waters, 276 B.R. *at* 888.

BAPCPA changed the law regarding the eligibility of a debtor to receive a discharge in a Chapter 13 case after receiving a discharge in a prior case by adding new §1328(f), which provides as follow:

> (f) Notwithstanding subsections (a) and (b), the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge -
>
> (1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter, or
>
> (2) in a case filed under chapter 13 of this title during the 2-year period preceding the date of such order.

11 U.S.C. §1328(f).

Courts considering the impact of new §1328(f) have held that the provision does not restrict a debtor's eligibility to file a Chapter 13 case and obtain confirmation of a plan which otherwise complies with the Code. In re Bateman, 515 F.3d 272 (4th Cir. 2008); In re Lewis, 339 B.R. 814 (Bankr. S.D. Ga. 2006); In re McGehee, 342 B.R. 256 (Bankr. W.D. Ky. 2006); In re Sanders, 368

B.R. 634 (Bankr. E.D. Mich. 2007). Nevertheless, these no-discharge Chapter 13 cases raise issues of the extent to which relief can be granted in the absence of a discharge, and whether the cases are filed in good faith. *See, e.g.,* In re Lilly, 378 B.R. 232 (Bankr. C.D. Ill. 2007) (limiting the permanent effect of using a Till interest rate rather than the contract interest rate in a no-discharge case); Lewis, 339 B.R. *at* 817 (availability of a discharge is a factor in determining good faith of a serial filing).

The extent of the relief available to a debtor in a no-discharge Chapter 13 case was examined in Lilly in the context of whether the modification of a creditor's interest rate was permanent and binding after the completion of plan payments. The Lilly court found that, although a debtor could obtain confirmation of a no-discharge Chapter 13 plan which modified a creditor's interest rate from the contract rate for purposes of calculating plan payments, such modification was not permanent and, in the absence of a discharge, the collateral securing the debt would still be encumbered by the balance due on the debt calculated at the contract rate. Lilly, 378 B.R. at 237. *See also* In re Williams, 367 B.R. 625 (Bankr. N.D. Ill. 2007) (confirmation denied in no-discharge Chapter 13 case which proposed to modify interest rate). *Contra* In re Hopkins, 371 B.R. 324 (Bankr. N.D. Ill. 2007) (confirmation allowed in no-discharge Chapter 13 case which

-10-

proposed to satisfy secured claim by paying less than contract rate interest).

The Lilly holding is, admittedly, somewhat distinguishable from the case here because the Lilly court focused on §1325(a)(5)(B) which provides specifically for the treatment of "allowed secured claims." 11. U.S.C. §1325(a)(5)(B); Lilly, 378 B.R. *at* 235. Here, the claim of Heartland Credit Union is not an allowed secured claim but, rather, may be treated as an unsecured claim. Nevertheless, the Lilly court's analysis of the extent to which modification of a creditor's rights may occur in the absence of a discharge is instructive. The Lilly court stated:

> Where a debtor does not receive a discharge, however, any modifications to a creditor's rights imposed in the plan are not permanent and have no binding effect once the term of the plan ends. (citations omitted) This long-standing principle was not altered by BAPCPA.
>
> . . . .
>
> Thus, the effect on secured claims of not receiving a discharge in a Chapter 13 case is consistent whether the case is dismissed, converted or completed without a discharge because the debtor is not eligible for one.

Lilly, 378 B.R. *at* 236-37.

This Court agrees with the Lilly court's analysis. A no-discharge Chapter 13 case may certainly be utilized to obtain the protections of the automatic stay for the purpose of proposing a plan to make payments on debts. A no-discharge Chapter 13 case may not, however, result in a permanent modification of a creditor's rights where such modification has traditionally only been achieved

-11-

through a discharge and where such modification is not binding if a case is dismissed or converted. This Court can find no evidence that, by adding new §1328(f), Congress intended to expand debtors' remedies in the way that the Debtor here proposes.

This holding is consistent with the longstanding principles that have governed the filing of Chapter 13 cases to deal with remaining lien rights after a debtor has discharged personal liability to pay a debt. In Johnson v. Home State Bank, the Supreme Court of the United States found that a surviving mortgage lien was a "claim" subject to inclusion in a Chapter 13 case notwithstanding the debtor's prior extinguishment of personal liability to the claimant. Johnson, 501 U.S. *at* 84, 111 S.Ct. *at* 2154. Further, the Supreme Court held that a creditor who has "a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for purposes of the Code." Id. *at* 85, 111 S.Ct. *at* 2155.

Cases such as King which helped to develop the theory of lien stripping of fully unsecured claims involved debtors who had previously received a Chapter 7 discharge and did not need the Chapter 13 discharge to extinguish personal liability. Rather, those cases hold that the use of Chapter 13 to modify rights not discharged in the prior case requires a second discharge to be fully effective. Courts have consistently held that, because a portion - the *in rem* portion - of a creditor's claim against a

-12-

debtor remains after the Chapter 7 discharge, the permanent modification of that claim can only be effected by completing the terms of the Chapter 13 and receiving a discharge notwithstanding the discharge of personal liability in the prior case. King, 290 B.R. *at* 651; In re Akram, 259 B.R. 371, 378-79 (Bankr. C.D. Cal. 2001). Nothing in the limited legislative history of BAPCPA suggests that Congress intended to change that result.

As set forth above, some cases reviewing the propriety of no-discharge Chapter 13 cases have focused on the good faith provisions which control confirmation of a Chapter 13 plan. 11 U.S.C. §1325(a)(3),(7). Because of the Court's findings set forth above, confirmation of the Plan will be denied, and it is not necessary to fully address whether the Debtor here filed his petition and the Plan in good faith.  Further, this Court has not held a hearing on the good faith issue and, accordingly, the Debtor has not had an opportunity to present evidence on that issue.  The Court notes, however, that there are several provisions of the Debtor's Plan which might be construed as evidencing bad faith. Should the Debtor attempt to amend the Plan to conform to this Opinion, the Debtor will need to address these good faith issues and, accordingly, two of the most serious will be briefly discussed.

First, the Plan is, quite simply, contrived.  The only debts to be paid through the Plan are the Debtor's regular first mortgage

-13-

payment and the monthly car payment.  In both instances, the Plan is not being used to cure defaults or otherwise modify the rights of the creditors involved.  No reason, other than the apparent need to make it look like debts are being paid through the Plan, exists for these two monthly obligations to be paid through the Chapter 13 Trustee.  In reality, the Debtor's proposal for the only creditor actually dealt with in the Plan - Heartland Credit Union - is zero payments for zero months.   Rather than set forth that proposal directly, the treatment is camouflaged by the proposal of 12 months of payments to unimpaired creditors.

Likewise, the eight pages of unsecured creditors filed by the Debtor on Schedule F add to the attempted subterfuge.  All of the creditors listed were also listed and, presumably, discharged in the Debtor's prior Chapter 7 case.  None of the creditors are identified as having been excepted from discharge in the Chapter 7 case. Further, the Debtor's description of all of the creditors as "unknown" is simply not true.  If the Debtor knew who these creditors were in 2006 when he filed his Chapter 7 case - and he did - he must surely know who they are now.  No obvious reason exists for listing all of these alleged, but previously discharged, creditors other than to disguise the fact that this case and the proposed Plan are all about dealing with only one creditor.

Second, the Debtor's Plan fails to comply with the requirements of <u>King</u> and would not be confirmed even if the

-14-

Debtor's ineligibility to receive a discharge were not at issue. King and many similar cases require that the creditor whose lien is to be stripped be treated as an unsecured creditor and paid accordingly.  King, 290 B.R. *at* 651; Akram, 259 B.R. *at* 378-79. The actual "strip off" occurs not at confirmation, but rather at discharge.  Here, the Debtor proposes that Heartland Credit Union have no claim - secured or unsecured - whatsoever and proposes that the "strip off" be fully effective at confirmation.  Thus, the Plan does not comply with the basic requirements of King and could not be confirmed even if the Debtor were eligible for a discharge.

For the reasons set forth above, confirmation of the Plan will be denied.  The Debtor, however, will be allowed an opportunity to file an Amended Plan consistent with this Opinion.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###